An appropriate order will enter.

Gaylus BAILEY, Plaintiff,

v.

**REAL TIME STAFFING SERVICES, INC. d/b/a Select Staffing, Defendant.**

No. 2:11–cv–02055V.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 7, 2012.

Jessica Farris Salonus, Jonathan L. Bobbitt, Justin Gilbert, Gilbert Russell McWherter PLC, Jackson, TN, for Plaintiff.

James R. Mulroy, II, Pamela R. Irons, Robbin W. Hutton, Jackson Lewis LLP, Memphis, TN, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DIANE K. VESCOVO, United States Magistrate Judge.

This is an employment discrimination action in which the plaintiff, Gaylus Bailey ("Bailey"), alleges that the defendant, Real Time Staffing Services, Inc. d/b/a Select Staffing ("Select Staffing"), violated the Americans with Disabilities Amendments Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendment Act of 2008 ("ADAAA"), "by terminating his employment for a manifestation of his disability." (Compl., D.E. 1, at 5.) Select Staffing filed a motion for summary judgment. (Def.'s Mot. for Summ. J., D.E. 21.) Bai-

ley filed a response, (Pl.'s Resp. to Def.'s Mot. for Summ. J., D.E. 32), and Select Staffing filed a reply. (Def.'s Reply, D.E. 34.) The parties have consented to the jurisdiction of the United States Magistrate Judge. For the reasons set forth below, Select Staffing's motion is granted in part and denied in part.

## I. FACTS

The following facts are undisputed for purposes of the motion for summary judgment.

Select Staffing services is a staffing agency that supplies temporary workers to client companies. (Def.'s Statement of Facts, D.E. 27–2, at 1.) Bailey started working for Select Staffing around 2005 to 2007 and was placed on numerous assignments. (*Id.*) Peggy Franklin ("Franklin") is the human resources manager of the Select Staffing branch where Bailey worked. (*Id.*) Bailey was diagnosed with HIV in 2006. (*Id.* at 2.) Select Staffing was unaware that Bailey was HIV positive while he was employed at Select Staffing. (*Id.*) Bailey's employment file reviewed by Select Staffing did not contain any medical information. (*Id.*)

In December 2009, Bailey was assigned to Sergeant's Pet Care Products ("Sergeant's"). (*Id.*) Sergeant's reviewed its policies with Bailey that included a policy supporting a drug-free workplace. (*Id.*) Select Staffing policy also dictates termination when a temporary associate fails a drug test. (*Id.* at 4.) Around March 11, 2010, Sergeant's conducted a random drug test of all Sergeant's employees and Select Staffing temporary associates. (*Id.* at 2.) The drug testing is contracted out to a medical testing lab, National Diagnostics, Inc., a non-party to this case. (*Id.* at 2–3; Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 4.) Bailey tested positive for marijuana.

(Def.'s Statement of Facts, D.E. 27–2, at 2.) Bailey's employment was terminated due to the failed drug test.[1] (*Id.* at 4; Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 3.)

After he tested positive, Bailey was advised to talk with the Medical Review Officer ("MRO") and was told that an MRO would be contacting him. (Def.'s Statement of Facts, D.E. 27–2, at 4.) Immediately after testing positive, Bailey obtained a letter from his doctor dated March 11, 2010 that explained that his prescription medicine "may cause a positive drug screen." (Exhibit B, D.E. 32–3) Bailey obtained a second letter from his doctor dated March 15, 2010, indicating that he takes prescription medication that "may result in a false positive for marijuana on a urine drug screen." (Exhibit C, D.E. 32–4.) The letters do not reveal or refer to any medical condition which Bailey has or what prescription medication Bailey was taking to cause the false positive. Bailey was actually taking atripla to treat his HIV, which medication causes false positives for cannabis. (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 4.)

Franklin told Bailey that she could not accept the letters from Bailey's doctor and that she is directed by Select Staffing to direct all communications regarding false positives to the MRO. (*Id.* at 3; Def.'s Statement of Facts, D.E. 27–2, at 4.)

Franklin further told Bailey that Select Staffing's policy dictates termination when a temporary associate fails a drug test. (Def.'s Statement of Facts, D.E. 27–2, at 4.)

Bailey submitted a statement of additional facts to which Select Staffing never responded. (*See generally* Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 4–8.) Because Select Staffing never responded, the court treats these facts as undisputed for the purposes of summary judgment to the extent they are not inconsistent with Bailey's response to Select Staffing's undisputed facts and to the extent that Bailey's additional facts are supported by admissible evidence.

Bailey testified that he anxiously began waiting for the call from an MRO but did not receive one after five to six days. (*Id.* at 6.) Bailey claims that no MRO contacted him, and as a result, Bailey testified that he went directly to Franklin with his doctor's letter. (*Id.*) Franklin indicated that no change would occur regarding Bailey's employment status without action from the MRO. (*Id.*)

Bailey testified that, after waiting five to six days, he called a phone number for the MRO. (*Id.*) Instead of reaching an MRO, Bailey stated that an unidentified female employee answered the phone. (*Id.* at 7.) Bailey advised the woman of his doctors'

---

**1.** It is not clear to the court if Bailey's employment was terminated immediately after he failed the drug test or a couple of days after Bailey brought Franklin the March 15, 2010 letter from his doctor. (*Compare* Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 3, ¶ 27 ("Moreover, Franklin admits terminating Plaintiff 'a couple of days after Mr. Bailey brought her the letter on [March] 15th.' (Franklin dep. P. 15, Ex. A)") *with* Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 5, ¶¶ 13 and 15 (noting that "[i]mmediately [after Plaintiff

failed his urinalysis], Plaintiff was informed that his assignment was ended. (Plaintiff depo., pp. 73, 44, Ex. D)" and "[w]ithin two hours of his termination, plaintiff presented a letter from his doctor ... (Plaintiff depo., pp. 46–47.)")). See also the allegations in Bailey's complaint in which he alleges "Defendant acted upon the false positive—attributing to Plaintiff a dangerousness that is false. Specifically, Defendant instructed Plaintiff that he was terminated—would not be sent on any further assignments—due to the drug test result." (Compl., D.E. 1, at 4.)

notes. (*Id.*) Bailey could not remember what his medications were when questioned by the medical lab employee as to what medications he was taking. (Def.'s Statement of Facts, D.E. 27–2, at 3.) Bailey stated in his deposition that he did not feel comfortable disclosing or discussing his HIV positive status with the medical lab employee. (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 2.) Bailey read the letters from his doctors to the medical lab employee. (Def.'s Statement of Facts, D.E. 27–2, at 3.) The employee from the medical testing lab advised Bailey that the disposition of his test would remain the same. (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 7.) The medical facility that conducted the drug testing performed the testing on the urine specimen in accordance with Department of Health and Human Services Substance Abuse and Mental Health Services Administration ("SAMH-SA") guidelines. (*Id.* at 4; D.E. 32–7, Ex. F.)

Bailey disputes several facts. Select Staffing claims Franklin was never aware of Bailey's medical condition or any details of it. (Def.'s Statement of Facts, D.E. 27–2, at 2.) Bailey disputes this assertion and asserts that Franklin was told by two other Select Staffing employees that he had told them that he suffered from "some sort of kidney illness that would cause a false positive." (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 1.) Select Staffing also claims

that Franklin never saw the content of the letters from Bailey's doctors and that Franklin instructed Bailey to either answer or return the call to the MRO to clarify the drug test. (Def.'s Statement of Facts, D.E. 27–2, at 4.) Bailey disputes this as well and claims that Franklin was advised of the contents of the letters. (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 3.) In addition, an "MRO Verification Worksheet" states that Bailey declined the opportunity to speak with an MRO, (*Id.* at 7–8.) Bailey, however, testified that he never declined to speak with an MRO. (*Id.*)

Bailey also insists that National Diagnostics, Inc. was required to follow SAMH-SA guidelines for Medical Review Officers. In support of his response to Select Staffing's motion for summary judgment, Bailey has proffered The Medical Review Officer Manual for Federal Agency Workplace Drug Testing Programs. (D.E. 32–8, Ex. G.) This manual, however, has not been properly authenticated and therefore Bailey's assertion that National Diagnostics, Inc. was required to adhere to the Manual cannot be accepted as undisputed.[2]

## II. CONCLUSIONS OF LAW

### A. *Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

---

2. Bailey insists that the Manual requires an MRO to contact an employee as soon as possible. (Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 4.) If an employee discusses that a possible medical condition causes a false positive, the MRO must require the employee to provide appropriate supporting documentation within a specified time. (*Id.* at 5.) The MRO is supposed to advise the employee that he or

she may have the specimen retested within seventy-two hours. (*Id.*) According to Bailey, the manual also allows the employee to provide acceptable supporting documentation to explain the false positive by providing a copy of the prescription, the medicine container, or a copy of the medical record documenting the valid medical use of the drug, or the MRO may contact the prescribing physician or pharmacist to verify the information. (*Id.*)

R.Civ.P. 56; *see also LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.,* 979 F.2d 1131, 1133 (6th Cir.1992). The moving party has the burden of showing that there are no genuine issues of material fact in the case. *LaPointe,* 8 F.3d at 378. This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 340 (6th Cir.1993); *see also LaPointe,* 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *LaPointe,* 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Patton,* 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *LaPointe,* 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adams v. Metiva,* 31 F.3d 375, 379 (6th Cir.1994).

**B.** *Discrimination Under the ADA*

The ADA prohibits discrimination "against a qualified individual with a disability on the basis of disability in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination requires a plaintiff to establish that (1) he or she is a disabled person within the meaning of the ADA, (2) he or she is a qualified individual who can perform the essential functions of the job with or without reasonable accommodation, and (3) the employer terminated the plaintiff because of the disability. *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir.1998). Employment discrimination can be proven with direct evidence of discriminatory intent. *Id.* A plaintiff may also prove employment discrimination with circumstantial evidence, using the prima facie case and the familiar burden-shifting method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Gantt,* 143 F.3d at 1047. Here, Bailey has not come forward with direct evidence of disability discrimination. Therefore, Bailey must proceed by using the prima facie case and burden-shifting method.

"Disability" within the meaning of the ADA is defined as (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). The ADA was amended by the ADAAA in 2008. The ADAAA altered the first definition of disability. It rejected the demanding definition for "substantially limits" that the Supreme Court had laid out in *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197–199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), that required an individual to be prevented or severely restricted from doing activities that are of central importance to most people's daily lives. Now, a less-demanding standard is applied to determine whether an individual suffers from an actual disability.[3]

The ADAAA also expanded the third definition of disability—"regarded as having such an impairment." Before the amendments, a plaintiff had to show that he or she was "regarded as" having an impairment that substantially limited a major life activity. Under the amended definition, "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The ADAAA also mandates that "[t]he definition of disability . . . shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A).

■ The ADA prohibits discrimination "because of" an employee's disability, meaning that the ADA prohibits discrimination that is the "but-for" cause of an employer's adverse decision. *Lewis v. Humboldt Acquisition Corp., Inc.,* 681 F.3d 312, 321 (6th Cir.2012)(en banc). Either Select Staffing discriminated against Bailey because of a certain impairment—actual or perceived—or it did not.

Bailey's complaint alleges that Select Staffing discriminated against him in violation of the ADA "by terminating his employment for a manifestation of his disability." (Complaint, D.E. 1, at 5.) In its motion for summary judgment and reply, Select Staffing argues that Bailey cannot establish (1) that he was "disabled" under the ADA or "regarded as" disabled; (2) that Select Staffing knew or had reason to know of his HIV-positive status and took an adverse employment action because of it; and (3) that Select Staffing's reason for terminating his employment, the failed drug test, was pretextual. (Def.'s Mem., D.E. 27–1 at 5.)

In his response in opposition to summary judgment, Bailey maintains that the issue is "straightforward" in this case: whether Select Staffing erroneously regarded Bailey as an illegal drug user in violation of 42 U.S.C. § 12114(b). (Pl.'s Resp., D.E. 32, at 1.) This case is anything

---

**3.** The ADAAA became effective January 1, 2009, before Bailey's employment was terminated. The regulations implementing the ADAAA went into effect on May 24, 2011, after Bailey's employment was terminated. Thus, the amendments to the ADA apply, but the regulations implementing the amendments do not necessarily apply to his case.

The regulations base the definition of "substantially limits" on how the individual func-

tions as compared to the general population. 29 C.F.R. § 1630.2(j)(ii) (2011). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.... [N]ot every impairment will constitute a disability within the meaning of this section." *Id.*

but straightforward, however. Bailey, in a piecemeal fashion, is trying to establish a discrimination claim by using a combination of "disabilities"—HIV, a non-existent kidney condition, and perceived drug use. For instance, Bailey's brief suggests that Select Staffing had "reason to know" that Bailey had a disability because someone at Select Staffing believed that Bailey had a kidney condition. (*Id.* at 9.) Bailey also advances the argument in his brief that Select Staffing discriminated against him because of his HIV-positive status. (*Id.* at 3.) To make matters more confusing for the court, Bailey, at the outset of his brief, while recognizing that "sole cause" is no longer the test, actually asserts that Select Staffing's errant belief that Bailey was engaged in illegal drug use is the "sole cause" for his termination. (*Id.* at 2.) If this is the case, the court is perplexed as to how Bailey's HIV or non-existent kidney condition are relevant to the case at all.

Regardless, Bailey advances discrimination arguments based on these "disabilities." The court will address them separately in order to determine whether the record, viewed in the light most favorable to Bailey, supports a reasonable inference that Select Staffing discriminated against Bailey "because of" these disabilities.

1. *Discrimination Because of Bailey's HIV*

██ Any claim by Bailey that Select Staffing discriminated against him because of an actual disability, his HIV-positive status, fails. It is undisputed that Bailey did not disclose to anyone at Select Staffing that he had HIV. (Def.'s Statement of Facts, D.E. 27–2, at 1; Pl.'s Resp. to Def.'s Statement of Facts and Add'l Statement of Facts, D.E. 32–1, at 1.) Bailey has produced no evidence that Select Staffing had "reason to know" that he was HIV-positive. Thus, it would be impossible for Select Staffing to discriminate against Bailey because of an actual disability, Bailey's HIV-positive status. *See Fisher v. Trinova Corp.*, No. 96–3918, 1998 WL 774111, at *5 (6th Cir. Oct. 13, 1998) (holding that an HIV–Positive employee did not establish a prima facie case of discrimination because he failed to demonstrate that his employer had knowledge of his HIV).

Under the third disability definition, i.e. "regarded as," Bailey asserts a plaintiff must only establish having an impairment . . . and being subjected to an adverse action." (Pl.'s Resp., DE. 32, at 3.) Bailey argues that there is sufficient evidence that he has an HIV impairment and was terminated, and therefore summary judgment should be denied. (*Id.*) This assertion ignores the causation requirement for an ADA discrimination claim. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir.2012). A plaintiff is also required to demonstrate causation when proceeding under the "regarded as" definition for disability. 42 U.S.C. § 12102(3)(A) (stating that the employee must establish that "he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment.")(emphasis added). Bailey has not come forth with any evidence that Select Staffing perceived Bailey to be suffering from HIV and discriminated against him because of that perception.

Thus, Select Staffing is entitled to summary judgment for any claim that it discriminated against Bailey because of his HIV-positive status.[4]

---

**4.** Because there is no evidence in the record to suggest that Select Staffing discriminated against Bailey because of his HIV, the court questions whether the fact that he is HIV positive is relevant and whether any evidence or testimony concerning Bailey's HIV would be relevant and admissible at trial.

### 2. Discrimination Because of a Perceived Kidney Condition

Bailey also argues that Select Service discriminated against Bailey because of a perceived kidney condition. It is undisputed that Bailey did not have a kidney condition. (*See* Compl., D.E. 1, at 3 ("Plaintiff does not have a kidney disease.").) Because this is not an actual disability from which Bailey suffers, Bailey would have to demonstrate that Select Service regarded Bailey's nonexistent kidney condition as an impairment and took an adverse action against him because of that perceived impairment. *See* 42 U.S.C. § 12102(3)(A).

■ This issue is difficult for the court to analyze because Bailey, at the outset of his brief, states that the "sole cause" for his firing was Select Staffing's erroneous belief that Bailey was using illegal drugs. (Pl.'s Resp., D.E. 32, at 2.) Later in the brief, in a section discussing the "regarded as" definition for disability, Bailey asserts that "Defendant incorrectly perceived that Bailey had a kidney impairment for which he took medicine causing the false positive [and] Plaintiff need not show any further errant beliefs because he has proved Defendant's mistaken knowledge of an impairment and the false positive issue was clearly expressed." (D.E. 32, at 10.) Bailey's brief does not assert or even suggest that "but for" the perceived kidney condition, Select Staffing would not have fired Bailey, or that "but for" the perceived kidney condition, Select Staffing would have assisted him in his effort to fix the false positive.

Bailey's sole evidence that Select Staffing perceived him as having a kidney condition is that Franklin testified that two employees told her that Franklin told them that he had a kidney condition. The court finds that no reasonable jury could find that Select Staffing perceived Franklin as having a kidney impairment and terminated him because of a perceived kidney impairment based on this evidence alone.

Thus, Select Staffing is entitled to summary judgment to the extent that Bailey claims Select Staffing terminated him because it perceived Bailey as having a kidney condition.

### 3. Discrimination Because of Drug Use

■ Bailey claims that Select Staffing violated 42 U.S.C. § 12114(b) by treating him as a drug user when he gave a false positive on his drug test. Bailey asserts that "[u]nder 42 U.S.C. § 12114(b), Plaintiff must simply show that *he* was falsely regarded as an illegal drug user, owing to Defendant's failed protocols, and that he was terminated based upon this regard." (D.E. 32, at 13.) This statement misconstrues § 12114(b), which does not provide a cause of action. Rather, it is a rule of construction that is best understood when read in relation to all of § 12114 and the ADA.

■ Section 12114(a) excludes individuals currently engaged in the illegal use of drugs from the definition of an "individual with a disability" under the ADA. It provides, "'a qualified individual with a disability . . .' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). This means that an employee, who may be suffering from alcoholism or drug addiction, is not protected by the ADA when an employer takes action against the employee because of current illegal drug or alcohol abuse or because of unsatisfactory conduct caused as a result of such use. *Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 609 (10th Cir. 1998).

Section 12114(b), the section that Bailey claims Select Staffing violated, however, does not exclude certain individuals from

qualifying as qualified individuals with a disability. It provides:

> (b) Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who—
>
> > (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such;
> >
> > (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or
> >
> > (3) is erroneously regarded as engaging in such use, but is not engaging in such use. . . .

42 U.S.C. § 12114(b). Subsections (b)(1) and (b)(2) are not applicable in this case, but these sections operate to extend ADA coverage for those who are no longer abusing alcohol or drugs and are participating in or have completed drug rehabilitation programs. *Nielsen,* 162 F.3d at 609. Indeed, in some instances, "the mere status of being an alcoholic or illegal drug user may merit [ADA] protection." *Id.*

Subsection (b)(3), the relevant provision in this case, operates to exclude employees who are erroneously regarded as using illegal drugs from being disallowed the protections of the ADA. 42 U.S.C. § 12114(b)(3). While such an employee is not excluded from the protection of the ADA, an employee is not automatically protected or a "qualified person with a disability" when the employer makes such an erroneous determination, however. *E.E.O.C. v. Exxon Corp.,* 973 F.Supp. 612, 613–14 (N.D.Tex.1997)(stating that an "individual who falls under one of the subcategories of 42 U.S.C. § 12114(b) is not automatically a 'qualified person with a disability' for purposes of the protection under the ADA," and that the plaintiff must prove he or she suffers from a "disability" as that term is defined by the ADA). The employee must still satisfy the statutory definitions in order to proceed under the ADA. *See Hill v. Hamilton Cnty. Public Hosp.,* 71 F.Supp.2d 936, 950 (N.D.Iowa 1999)(noting that the plaintiff must establish that, in erroneously perceiving the plaintiff as an illegal drug user, the defendant perceived the plaintiff has having a disability). Claims involving the erroneous perception of illegal drug use are treated like any other claim involving a perception of impairment under the "regarded as" definition for disability under 42 U.S.C. § 12102(1)(c). *Nielsen,* 162 F.3d at 610 ("[T]he erroneous perception of being an illegal drug user is to be treated like any other perception of a disability. . . ."). Thus, an erroneous belief about drug use will only be a qualifying disability if the employer regarded the perceived drug use as *an impairment* and took action against the employee because of that perceived impairment. 42 U.S.C. § 12102(3)(A).[5] It is not enough that the employer perceived the employee to simply be an illegal drug user to receive ADA protection; perceiving someone as having

---

**5.** Prior to the 2008 amendments, an employee had to demonstrate that the employer perceived the drug use as substantially limiting a major life activity. *See Nielsen,* 162 F.3d at 610 (citing H.R.Rep. No. 101–485(II), at 77 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 360 (noting that individuals with perceived drug use dependence may satisfy the definition of disability by proving that they are "regarded as having a disability, as 'disability' has been defined under section 504 [of the Rehabilitation Act] and [the ADA] (i.e., a physical or mental impairment that substantially limits a major life activity)")); *Warshaw v. Concentra Health Servs.,* 719 F.Supp.2d 484, 496 (E.D.Pa.2010) (quoting 42 U.S.C. § 12114(b)(3) ("An individual who 'is erroneously regarded as engaging in [illegal drug] use, but is not engaging in such use' is disabled if the employer perceived the plaintiff as substantially limited in a major life activity because of the alleged drug use.")). As discussed above, the amendments broadened the "regarded as" definition for disability under 42 U.S.C. § 12102(1)(C). An employee must now only demonstrate that he or she was

an impairing substance abuse problem is very different from perceiving them to be a casual or recreational drug user. *See Perritt v. Trane U.S. Inc.*, No. 07–2031, 2008 WL 440994, *4 (W.D.Ark. Feb. 13, 2008)(requiring the plaintiff to demonstrate the employer regarded the plaintiff as having a drug problem of sufficient severity to avoid summary judgment).[6]

As discussed above, § 12114(b) does not provide a stand-alone right of action. Bailey must show that Select Staffing regarded the perceived drug use as an impairment and took action against him because of that perceived impairment. While there is a difference between perceiving someone to be a drug addict and perceiving them to be a casual or recreational user, Select Staffing did not respond to Bailey's argument on the issue. Because of the close proximity to the failed drug test and Bailey's termination, the court finds that there is a triable issue of fact. *See Warshaw v. Concentra Health Servs.*, 719 F.Supp.2d 484, 496 (E.D.Pa.2010) (denying summary judgment where the plaintiff offered evidence that the employer terminated the plaintiff after learning of the plaintiff's ADHD and drug test results, although the plaintiff clarified that he failed the drug test because of his ADHD medication). The fact that Bailey also attempted to provide a doctor's note directly to Franklin could support an inference that Select Staffing's legitimate reason—strictly adhering to protocol—could be pretextual.

There are other issues of fact that also preclude summary judgment at this time:

(1) whether Bailey was terminated immediately after he failed the drug test or terminated after he proffered his doctor's notes; (2) whether National Diagnostics was required to comply with certain guidelines in reviewing a failed drug test and failed to do so; (3) if National Diagnostics failed to comply with required procedures in reviewing and evaluating a failed to drug test, whether Selective Staffing is liable for their failure under an agency relationship;[7] (4) whether Bailey supplied necessary information to the MRO, and (5) whether Bailey refused to talk to the MRO.

Accordingly, summary judgment is denied on this claim at this time.

### III. CONCLUSION

Based on the foregoing reasons, the court grants in part and denies in part Select Staffing's motion for summary judgment.

IT IS SO ORDERED.

ORDER DENYING PLAINTIFF'S MOTION FOR REVISION and GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 12(C) FOR JUDGMENT ON THE PLEADINGS and DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

This is an employment discrimination action in which the plaintiff, Gaylus Bailey

---

subjected to an action prohibited by the ADA because of actual or perceived physical or mental impairment, regardless of whether the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A).

**6.** *Perritt* was decided before the effective date of the ADAAA.

**7.** The court questions whether Bailey is attempting to utilize the ADA as a vehicle to advance a negligence claim against Select Staffing and National Diagnostics for failure to follow guidelines and protocols. *See Warshaw*, 719 F.Supp.2d at 507 (denying summary judgment on employee's negligence claim against drug testing company).

("Bailey"), alleges that the defendant, Real Time Staffing Services, Inc. d/b/a Select Staffing ("Select Staffing"), terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") as amended by the ADA Amendment Act of 2008 ("ADAAA"). On May 16, 2012, Select Staffing filed a motion for summary judgment. (Def.'s Mot. for Summ. J., D.E. 21.) On August 7, 2012, the court granted in part and denied in part Select Staffing's motion for summary judgment. See Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("Order"), No. 2:11–cv–02055V (W.D.Tenn. Aug. 7, 2012), ECF No. 35. The court granted summary judgment in favor of Select Staffing on any claims by Bailey that Select Staffing discriminated against him because of his HIV-positive status and any claims that Select Staffing perceived Bailey as having a kidney condition. The court denied summary judgment as to Bailey's claims that he was erroneously perceived as an illegal drug user.

Now before the court is Bailey's November 26, 2012 motion for revision of the court's interlocutory order granting in part and denying in part Select Staffing's motion for summary judgment. (D.E. 44.) Also before the court is the November 15, 2012 motion of Select Staffing pursuant to Rule 12(c) for judgment on the pleadings seeking dismissal of the one remaining claim of Bailey's based on perceived illegal drug use, (D.E. 40), and the November 16, 2012 motion of Bailey to strike Select Staffing's motion for judgment on the pleadings. (D.E. 41.)

On November 30, 2013, a hearing was held on all pending motions. For the reasons that follow, Bailey's motion for revision is denied, Select Staffing's motion for summary judgment is granted in its entirety, and both Select Staffing's motion for judgment on the pleadings and Bailey's

motion to strike Select Staffing's motion are denied as moot.

## I. BAILEY'S MOTION FOR REVISION OF INTERLOCUTORY ORDER

### A. *Standard for Revision of Interlocutory Orders*

 Bailey fails to identify the procedural basis for his motion for revision, but the court will treat it as a motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and Local Rule 7.3. According to the Sixth Circuit, a district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 118 Fed.Appx. 942, 945–46 (6th Cir.2004) (citing *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991)). Motions " 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n. 5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008)(quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, at 127–28 (2d ed.1995)). Traditionally, reconsideration of an interlocutory order is only appropriate when one of the following has occurred: (1) an intervening change in the law; (2) the discovery of new evidence; or (3) the need to correct clear error or correct manifest injustice. *See Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.,* No. 09–2127, 2010 WL 3925261, at *2 (W.D.Tenn. Sept. 29, 2010). When the parties simply "view the law in a light contrary to that of [the court]," the "proper recourse" is not to file a motion to reconsider but rather to file an appeal. *Dana Corp. v. United*

*States,* 764 F.Supp. 482, 489 (N.D.Ohio 1991).

■ In this district, motions for revision of interlocutory orders are governed by Local Rule 7.3, which provides:

(a) *Application to Non–Final Orders.* Before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may move, pursuant to Fed.R.Civ.P. 54(b), for the revision of any interlocutory order made by that Court on any ground set forth in subsection (b) of this rule. Motions to reconsider interlocutory orders are not otherwise permitted.

(b) *Form and Content of Motion to Revise.* A motion for revision must specifically show: (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

(c) *Prohibition Against Repetition of Argument.* No motion for revision may repeat any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised. Any party or counsel who violates this restriction shall be subject to appropriate sanctions, including, but not limited to, striking the filing.

In his motion, Bailey states that " 'manifest injustice' exists for this motion because he is dying of HIV-related symptoms and, without proper revision, he may not survive an appeal to the Sixth Circuit." (Pl.'s Mot. for Revision, D.E. 44 at 1.) This is not an appropriate ground for revision under Local Rule 7.3.

In his memorandum in support of his motion, Bailey also relies on "legal error" as his ground for seeking revision. (Pl.'s Mem. in Supp. of Mot. for Revision, D.E. 44–1 at 2.) Specifically, Bailey asks the court to reconsider its findings that (1) Bailey has produced no evidence that Select Staffing knew or had reason to know Bailey was HIV positive or perceived him as HIV positive and terminated him because of such knowledge or perception, and (2) "no reasonable jury could find that Select Staffing perceived [Bailey] as having a kidney impairment and terminated him because of the perceived kidney impairment."

Bailey has not introduced any new evidence from that which was presented to the court before entry of the interlocutory order and that in the exercise of reasonable diligence was not known to Bailey at the time of the interlocutory order or an intervening change of law occurring after the time of such order which would warrant revision as is required by Local Rule 7.3(b)(1) and (2). Thus, the only possible ground for revision under Local Rule 7.3 is subsection (b)(2) which is "a manifest failure by the Court to consider material facts or dispositive legal arguments." The court will therefore review whether it manifestly failed to consider material facts or dispositive legal arguments.

Bailey also contends that the court's order is confusing and unclear in that it retained a trial on the issue of Bailey's claim that he was erroneously perceived as an illegal drug user without identifying

which impairment, real or perceived, formed the basis for Select Staffing's erroneous perception, given that the court granted summary judgment as to Bailey's claims based on both the actual impairment of HIV and the perceived impairment of kidney illness. (Pl.'s Mem. in Supp. of Mot. for Revision, D.E. 44–1 at 1.) The court will also clarify its ruling in this respect.

### B. *Discrimination on the Basis of Bailey's HIV–Positive Status*

Bailey first argues that the court, contrary to the law, required Bailey to show that Select Staffing knew or had reason to know of his HIV-positive diagnosis in order to establish a prima facie case of disability discrimination. (Pl.'s Mem. in Support of Mot. for Revision, D.E. 44–1 at 6; Pl.'s Reply Mem., D.E. 53 at 3.) Bailey misconstrues the court's holding. The court held "it would be impossible for Select Staffing to discriminate against Bailey because of an 'actual' disability, Bailey's HIV-positive status," because "Bailey has produced no evidence that Select Staffing had 'reason to know' that he was HIV-positive." (Order, D.E. 35 at 13 (emphasis added).) Bailey has not come forward with an authority that this is an incorrect application of the law, and the court finds that it appropriately applied the law in this respect.

The court then considered whether Select Staffing "regarded" Bailey as having an impairment, i.e., the third disability definition. (*Id.*) It is important to note at this point that Bailey's protestations that the court and Select Staffing have applied the wrong law, that is, the ADA, and not the ADAAA, is completely unfounded. In his reply brief, Bailey states "it would be 'manifestly unjust' for Defendant to seek summary judgment under the wrong law (the ADA)"; "the Defendant moved for summary judgment using the wrong law (the old ADA)"; and "Defendant's use of

the wrong law has gotten this case well off track." (Pl.'s Reply Mem., D.E. 53 at 1, 2, & 6.) Even if this were true (which the court does not believe it is), Bailey ignores the fact that the court carefully set out and applied the ADAAA as follows:

> The ADAAA also expanded the *third* "regarded as" definition for disability. Before the amendments, a plaintiff had to show that he or she was "regarded as" having an impairment that substantially limited a major life activity. Under the amended definition, "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The ADAAA also mandates that "[t]he definition of disability ... shall be construed in favor of broad coverage...." 42 U.S.C. § 12102(4)(A).

(Order, D.E. 35 at 10.) The court went on to explain that the amendments to the ADA apply because they went into effect on January 1, 2009, before Bailey was terminated, but the regulations implementing the amendments do not necessarily apply because they became effective May 24, 2011, after Bailey was terminated:

> The ADAAA became effective January 1, 2009, before Bailey's employment was terminated. The regulations implementing the ADAAA went into effect on May 24, 2011, after Bailey's employment was terminated. Thus, the amendments to the ADA apply, but the regulations implementing the amendments do not necessarily apply to his case.

(*Id.* at 10 n. 3.)

Bailey argues in his motion for revision that "it is unclear whether Plaintiff's 're-

garded as' claim of discrimination due [sic] the 'impairment' of HIV remains for trial ... because ... the Court only granted summary judgment on the first prong (actual disability) of the ADAAA, not the third prong ('regarded as')." (Pl.'s Reply Mem., D.E. 53 at 2.) But, applying the ADAAA, the court specifically determined that "Bailey has not come forth with any evidence that Select Staffing *perceived* Bailey to be suffering from HIV and discriminated against him because of that perception." (Order, D.E. 35 at 14 (emphasis added).) Bailey's sole argument in response to Select's Staffing's motion for summary judgment on this ground was that now, under the ADAAA's "regarded as" definition of disability, a plaintiff is only required to show two things: "having an impairment (here, HIV) and being subjected to an adverse action (termination of employment)." (Pl.'s Resp. in Opp. to Def.'s Mot. For Summ. J., D.E. 32 at 3.) The court disagreed. The court found that this simplistic formulation ignored the "causation" requirement of a prima facie case. There must be some evidence, direct or circumstantial, that Select Staffing perceived Bailey as having HIV in order to take an adverse action "because of" Bailey's perceived HIV-positive status. Thus, the court granted summary judgment as to Bailey's "regarded as" claim of disability as it relates to Bailey's HIV-positive status.

The court finds that this was also an appropriate application of the law. Prior to the ADA Amendments Act of 2008, the ADA prohibited discrimination "because of" the disability of an employee. 42 U.S.C. § 12112(a). The ADAAA changed "because of" to "on the basis of disability." It now reads: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees...." 42 U.S.C. § 12112(a) (effective

January 1, 2009). Yet, this amendment did not change the "causation" requirement of a prima facie case. There still must be some evidence that Select Staffing perceived Bailey as HIV positive in order to discriminate against him on the basis of a perceived disability based on HIV-positive status. It is undisputed that Bailey never told anyone at Select Staffing prior to his termination that he was HIV positive nor has he produced any evidence whatsoever upon which a jury could find that Select Staffing perceived him to be HIV positive. Thus, the court properly granted summary judgment in favor of Select Staffing for any claim that it discriminated against Bailey on the basis of his HIV-positive status, both actual or perceived.

### C. Discrimination on the Basis of a Perceived Kidney Condition

As to Bailey's claim of discrimination on the basis of a perceived kidney condition, Bailey's ground for revision appears to be that the court failed to consider material facts. (Pl.'s Mem. in Supp. of Mot. for Revision, D.E. 44–1 at 4.) Bailey insists that the following evidence in the record is sufficient evidence from which the jury could find that Selective Staffing regarded him as having a kidney impairment: (1) Ms. Peggy Franklin, Select Staffing's branch manager, was told by two employees, Ms. Felicia Jones and Ms. Tamara Watkins, that Bailey told them he had a kidney condition that caused a false positive on his drug test; and (2) that Bailey provided Ms. Franklin two doctor's notes which indicated his prescription medicine could cause the false positive before his termination. (*Id.*)

The court did not fail to consider material facts. Although Bailey overstates these facts in his memorandum in support of his motion for revision, these are substantially

the very facts that the court considered in reaching its conclusion that "no reasonable jury could find that Select Staffing perceived Franklin as having a kidney impairment and terminated him on the basis of a perceived kidney impairment." (Order, D.E. 35 at 10.)

As discussed at the hearing, the deposition testimony of Ms. Franklin submitted in support of Bailey's response to the motion for summary judgment does not indicate that Ms. Franklin was ever told that Bailey had a "medical condition" or much less an "ongoing medical condition." Rather, Ms. Franklin testified that "Felicia [Jones] told me that [Bailey] told her he had some sort of kidney illness that would cause a false positive," (Franklin Dep., D.E. 32–2 at 12), and that Ms. Watkins told her that Ms. Jones had told her (Ms. Watkins) that Bailey told Ms. Jones he had a kidney issue, (id. at 17). Bailey's attorney, not Ms. Franklin, was the only person who ever used the word "ongoing medical condition" in the deposition. In addition, Ms. Franklin testified that "she never asked Bailey what his medical condition was." (Id. at 13–14.)

Moreover, neither of the two doctor's notes referenced any medical condition whatsoever. The March 11, 2010 note from Marye Bernard FNP, MSN stated: "Mr. Galyus Bailey is a patient in my clinic at the Regional Medical Center. Mr. Galyus Bailey is prescribed a medication that may cause a positive drug screen." (Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. Ex. B, D.E. 32–3 at 2.) The second note dated March 15, 2010, again from Bernard, stated: "Galyus Bailey is a patient at the Regional Medical Center at Memphis/Medplex. Mr. Bailey has been prescribed medication that may result in a false positive for marijuana on a urine drug screen (UDS)." (Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. Ex. C, D.E. 32–4 at 2.)

As used in the ADAAA, effective January 1, 2009, the term "disability" is defined as follows:

(1) Disability

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (emphasis added). Subsection (3) provides:

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3) (emphasis added). In order to meet the disability definition of "being regarded as having such an impairment," the impairment must have an actual or expected duration of more than six months. The statute is clear that the "regarded as" definition of disability does not apply to transitory or minor impairments.

In his reply memorandum in support of his motion for revision and at the hearing, Bailey represented to the court that "[n]ow under the ADAAA, even temporary impairments can be disabilities," citing 29

C.F.R. § 1630.2(j)(1)(ix). (Pl.'s Reply Mem., D.E. 53 at 5.) This is not a completely accurate statement of the law. That regulation provides that "[t]he six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage in § 1630.15(f) does not apply to the definition of 'disability' under paragraphs (g)(1)(i) (the 'actual disability' prong) or g(1)(ii) (the 'record of' prong) of this section." 29 C.F.R. § 1630.2.(j)(1)(ix). Under this regulation, temporary disabilities, less than six months, are not covered by the "regarded as" prong. Moreover, this regulation relied upon by Bailey did not take effect until May 24, 2011, and therefore is not even applicable to this case.

At the hearing, Bailey further insisted that the burden is on Select Staffing to show that it perceived Bailey's impairment as being transitory or minor, but Bailey's counsel was unable to cite to any authority for his position. The court disagrees. The burden is on the plaintiff to establish a prima facie case. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998). One of the elements of a prima facie case of disability discrimination is that the plaintiff has a disability within the meaning of the ADA, (*id.*), which includes being regarded as having such an impairment. Under 42 U.S.C. § 12102(3), "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment" that is not "transitory and minor." (*Id.*) Thus, to establish a prima facie case of disability discrimination, the plaintiff must prove that he was perceived as having an impairment that was not transitory or minor.

None of the evidence that Bailey came forth with in response to Select Staffing's motion for summary judgment contained any information about Bailey's kidney "issue" or why he was a patient at the Regional Medical Center. Bailey could have been taking a prescription medicine for a transitory kidney infection. The court, therefore, properly found and still finds, after a second review of the same evidence, that Select Staffing is entitled to summary judgment on Bailey's claim that Select Staffing terminated him on the basis of a perceived kidney impairment.

**D.** *Discrimination on the Basis of a Manifestation of an Impairment or Symptoms of an Impairment*

Bailey next argues that the court overlooked or failed to consider a dispositive legal argument, that is, that Select Staffing discriminated against him on the basis of a disability by terminating him for conduct—a false positive drug test—which is a manifestation of an impairment. (Pl.'s Reply Mem., D.E. 53 at 3.) As the court understands Bailey's argument, Bailey asserts that because the false positive on the drug test was caused by Bailey's prescription medication, the false positive was a manifestation or a symptom of some type of disability or impairment, and when Select Staffing terminated Bailey because of his positive drug screen, Select Staffing discriminated against Bailey based on his disability even though Select Staffing did not know of Bailey's disability or perceive him as having a disability. Under Bailey's rationale, it is not necessary for an employer under the amendments to the ADA to know the precise nature or diagnosis of an employee's impairment but rather it is sufficient for any employer to be aware of any symptoms that are caused or could be caused by a disability or impairment.

Bailey's argument defies logic. As previously stated, there is no evidence that Select Staffing had any knowledge that Bailey suffered from an impairment, actual

or perceived, as defined in the ADAAA. At best, Select Staffing knew that Bailey took prescription medication. This court is not prepared to find that terminating an employee who takes prescription medicine and failed a drug test is a violation of the ADAAA.

### E. Discrimination on the Basis of Drug Use

 The court mistakenly interpreted Bailey's complaint as asserting a separate claim based on "perceived illegal drug user" under 42 U.S.C. § 12114(b), and denied the defendant's summary judgment motion as to that claim only, finding factual disputes precluded the entry of summary judgment. (Order, D.E. 35 at 16–21.) Bailey, however, has made clear that he did not assert such a claim. As he stated, " 'perceived illegal drug use' in an of itself, does not necessarily reflect an impairment protected by the ADA–AA" and "there is no reason [Bailey] would use such words in his Complaint." (Pl.'s Mot. to Strike Def.'s Mot. for J. on the Pleadings, D.E. 41 at 2.) The court previously noted, "claims involving the erroneous perception of illegal drug use are treated like any other claim involving a perception of impairment under the 'regarded as' definition for disability under 42 U.S.C. § 12102(1)(c)." (Order, D.E. 35 at 18.) Bailey correctly points out that in order to prevail on a claim "under § 12102(1)(c), [Bailey] must show [Select Staffing] regarded [him] as having an actual or perceived impairment." (Pl.'s Mot. to Strike Def.'s Mot. for J. on the Pleadings, D.E. 41 at 2.) Because the court has found that there is no evidence from which a jury could find that Select Staffing regarded Bailey as having an actual or perceived impairment, a claim of discrimination based on "perceived drug use" must fail.

In addition, the factual disputes identified by the court were only relevant to what the court believed to be a stand-alone claim by Bailey of wrongful termination based on Bailey being perceived as a drug user, and given the fact that Bailey did not intend to assert such a stand-alone claim and such a claim cannot survive, the factual disputes are not material. Moreover, factual issues concerning the timing of Bailey's termination were resolved at the hearing and are no longer at issue.

Accordingly, the court rescinds its previous order to the extent it denied summary judgment as to a claim by Bailey that he was erroneously perceived as an illegal drug user, and grants Select Staffing's motion for summary judgment in its entirety.

### F. Pretext

 Even if Bailey were able to establish a prima facie case of discrimination because of a disability, actual or perceived, under the ADAAA, there is not sufficient evidence from which a jury could find that Select Staffing's stated reason for terminating Bailey was pretextual. When, as here, the plaintiff establishes a prima facie case of discrimination through circumstantial evidence, the court employs the classic *McDonnell Douglas* burden-shifting framework. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir.2008). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir.2004). It is undisputed that Select Staffing terminated Bailey because he failed a random drug test. (*See* Pl.'s Resp. to Def.'s Statement of Facts, D.E. 32–1 ¶ 34 ("Undisputed that this was the reason given.").) Termination for failing a drug test is a legitimate, nondiscriminatory reason for terminating an employee.

 To withstand summary judgment once Select Staffing has met its burden of articulating a legitimate, nondiscriminato-

ry reason for termination, the burden shifts to Bailey to come forward with evidence that Select Staffing's stated reason was pretextual. Bailey has failed to do so. Bailey has not proffered any evidence from which a jury could find that Select Staffing's reason was a pretext. Rather, all the evidence is that Select Staffing's reason was legitimate. During the same drug testing, two other employees also failed the drug test. (Def.'s Statement of Material Facts, D.E. 27-2 ¶ 27.) One employee acknowledged that there was no need to retest him or speak to a Medical Review Officer. (*Id.* ¶ 21.) The other employee provided prescription information and was returned to work. (*Id.* ¶ 20.) Ms. Franklin encouraged Bailey to provide prescription information to the Medical Review Officer, but he failed to do so.

## II. SELECT STAFFING'S MOTION FOR JUDGMENT ON THE PLEADINGS

In its motion pursuant to Rule 12(c) for judgment on the pleadings, Select Staffing seeks dismissal of the one claim on which the court denied summary judgment, that is, discrimination based on Select Staffing's perception of Bailey as an illegal drug user. The court has now revised its ruling and granted summary judgment as to any claim of discrimination based on Select Staffing's perception of Bailey as an illegal drug user. Accordingly, Select Staffing's motion is moot and is denied as such.

## III. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Because the court has denied Select Staffing's motion for judgment on the pleadings, Bailey's motion to strike Select Staffing's motion for judgment on the pleading is moot, and is denied as such.

## IV. CONCLUSION

In initially deciding Select Staffing's motion for summary judgment, the court carefully considered arguments. Bailey's arguments raised in the instant motion for revision are merely duplicative of his earlier arguments and therefore insufficient to warrant reconsideration of the court's prior ruling. Bailey's motion for revision is therefore denied. The court, however, rescinds the portion of its ruling denying in part Select Staffing's motion for summary judgment and now grants Select Staffing's motion for summary judgment in its entirety. Both Select Staffing's motion for judgment on the pleadings and Bailey's motion to strike Select Staffing's motion are denied as moot.

Accordingly, this case is dismissed with prejudice.

IT IS SO ORDERED.